CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Isabel Rose Masanque, Esq., SBN 292673
Sara Gunderson, Esq., SBN 302582
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Nehemiah Kong,** <br><br> Plaintiff, <br><br> v. <br><br> **4457 Manhattan Beach LLC,** a California Limited Liability Company; <br> **Kislev Inc.,** a California Corporation; and Does 1-10, <br><br> Defendants | **Case:** 2:18-CV-01874-RGK-KS <br><br> **Plaintiff's Reply Brief in Support of Motion for Summary Judgment** <br><br> Date:   May 13, 2019 <br> Time:   9:00 a.m. <br> Ctrm:   850 <br><br> Hon. Judge R. Gary Klausner |

## I. PRELIMINARY STATEMENT

Defendants' opposition demonstrates a profound misunderstanding of ADA law, as well as a misplaced contempt against Mr. Kong. At the same time, it fails to demonstrate a single viable defense regarding the defendants' failure to provide accessible facilities at its business, despite the law requiring businesses to do so for over two decades. Mr. Kong's litigation history is not a legitimate basis to discredit Mr. Kong or deny him relief. Moreover, as outlined fully below, none of the defenses asserted by the defendants with respect to the parking, transaction counter and restroom provide a sufficient legal basis for denying summary judgment. There is no defense in this case. The Court should grant the plaintiff's motion.

## II. DEFENDANTS DISPARAGE MR. KONG IN ATTEMPT TO DISTRACT FROM THEIR BLATANT NON-COMPLIANCE WITH THE LAW

In its motion, the defense documents Mr. Kong's litigation history in an attempt to disparage his motives and, therefore, to suggest a lack of integrity with respect to the substantive claims of his case. "The defendants, like so many other victims of Mr. Kong, are being forced to litigate a case that is not based upon noble goals but a profit-making enterprise by Mr. Kong. Mr. Kong has filed 277 cases in the Central District alone…Instead of actually patronizing this business, he is part of a larger scam being perpetrated on small businesses." (DKT No. 30, Defense Brief, p. 4:2-24). Aside from the fact that disparaging comments of this sort are unprofessional and unworthy of court proceedings, they have no relevance, as outlined below.

**A. Serial Litigation is a Legitimate Method of Enforcement**

Serial litigation, *i.e.*, multiple lawsuits brought by a single plaintiff, is a legitimate method of enforcing the law. The courts that have seriously grappled with the issue have concluded that there is nothing inherently wrong with serial litigation and, in fact, it serves a public good. Citing to Supreme Court precedent, one federal court noted, "successful ADA plaintiffs confer a tremendous benefit upon our society at large in addition to the attainment of redress for their personal individual injuries…the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law."[1]

The Ninth Circuit noted that "the term *professional* as in *professional plaintiff* is not a *dirty word* and should not itself undermine one's ability to seek redress for injuries suffered." *Gordon v. Virtumondo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) (quote marks in original switched to italics for readability and internal cites omitted). The *Gordon* court was quoting the court in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) where the plaintiffs had brought more than 50 cases under the FRCA and were "big time" litigants but the appellate court rejected criticisms of this fact and stated "what the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise."

"Civil rights law depends heavily on private enforcement." *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000). In fact, private serial litigation is the cornerstone of ADA enforcement. The Ninth Circuit has acknowledged – in multiple published opinions – that most ADA lawsuits are brought by a small number of private plaintiffs who view

---

[1] *Walker v. Carnival Cruise Lines*, 107 F.Supp.2d 1135, 1143 (N.D. Cal. 2000) (the "benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of private attorneys general who seek to vindicate a policy of the highest priority.").

Plaintiff's Reply                                                       Case: 2:18-CV-01874-RGK-KS

themselves as champions of the disabled, and "for the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serials litigation advancing the time when public accommodations will be compliant with the ADA." *See*, e.g. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971, 980 (9th Cir. 2010)

Not only has the Ninth Circuit – quoting the Department of Justice – noted that private litigants are essential for enforcement of the ADA, but the California Legislature feels the same way. When California recently passed the Construction-Related Accessibility Standards Compliance Act, it specifically found that despite the passage of the ADA and the 1992 amendments to the Unruh Act "persons with disabilities are still being denied full and equal access to public facilities in many instances." Cal. Gov't Code § 8299. The final Senate analysis of S.B. 1608 further noted that "there is so little, if any, public prosecution of access violations, that thus private enforcement efforts are central to the means by which these laws, like other civil rights laws, are designed to be enforced."[2]

### B. The Plaintiff's "Motives" Are Irrelevant

The implied argument is that the plaintiff is actively engaged in serial litigation to line his own pockets with the statutory penalties available under the Unruh Civil Rights Act and, therefore, his claims should be looked at with skepticism. This argument should be rejected for several reasons. First, of course a serial litigator is motivated by the right to recover statutory penalties. That is the *very purpose* of statutory penalties:

> It is apparent from this legislative history that section 52 has at least two important non-punitive purposes. The first is simply to provide increased compensation to the plaintiff. The second

---

[2] S. B. 1608 Senate Bill Analysis at 4 (Aug. 28, 2008).

> purpose, and perhaps the more important one, is *to encourage private parties* to seek redress through the civil justice system by *making it more economically attractive for them to sue*.
>
> [*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court*, 123 Cal. App. 4th 261, 270-71 (2004) (emphasis added).]

"Moreover, the inclusion of penalties and damages is the driving force that facilitates voluntary compliance with the ADA." *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000). Thus, the fact that the Mr. Johnson may be motivated by the right to recover statutory penalties is not an *abuse* of the law; it is the intended function of the law.

The court in *Feezor v. Chico Lodging, LLC*, 422 F. Supp. 2d 1179, 1181 (E.D. Cal. 2006) reached the same conclusion. The court was faced with a standing challenge and an attack on the plaintiff's credibility because the plaintiff had filed numerous other cases. The Court rejected the implication and stated, "The fact that plaintiff is fulfilling the Congressional purpose when it provided for private enforcement of the ADA is hardly evidence of bad faith."

### C. Litigation history is not a valid legal basis to challenge the plaintiff's standing or credibility or to diminish rights

It is, perhaps, understandable to have a knee-jerk reaction that would lead one to suspect inappropriate behavior by a plaintiff filing an avalanche of lawsuits. But this initial concern cannot withstand serious scrutiny given the fact that these businesses are *actually in violation* of the law. The number of disability access lawsuits filed by an individual plaintiff is not evidence of abuse. The *Wilson v. Murillo* holding on this issue is applicable in the present case:

> While Wilson obviously views himself as a champion of the disabled, he is condemned by Murillo as a serial litigant who exploits the ADA by filing lawsuits with "a clear intent to harass businesses and extort quick cash settlements...." Wilson

does not dispute that he has filed many ADA access lawsuits. Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. One court has examined the contents of Wilson's filings and has made an express finding that his ADA claims are not frivolous and that he is not a vexatious litigant. "From all that appears, the number of lawsuits [Wilson] has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law." (*Wilson v. Pier I Imports (US), Inc.* (E.D.Cal.2006) 411 F.Supp.2d 1196, 1200.) This difference in points of view being noted, we emphasize that Wilson's **litigation history is immaterial to our resolution of this case**.

> [*Wilson v. Murillo* 163 Cal.App.4th 1124, 1128, fn. 3 (2008).]

The "simple fact that a plaintiff has filed a large number of complaints" or the "textual and factual similarity of a plaintiff's complaints" is "not a basis" for finding that the plaintiff is involved in improper or vexatious litigation. *Molski Evergreen Dynasty Corp. I*, 500 F.3d 1047, 1061 (9th Cir. 2007).

In summary, it is clear that a history of bringing meritorious ADA claims cannot be used to diminish rights, to find a lack of standing or as a basis for denying summary judgment.

### III. DEFENDANTS WERE REQUIRED TO PROVIDE ACCESSIBLE PARKING OR PASSENGER LOADING ZONES

Defendants do not dispute that there was no accessible parking on the date of Mr. Kong's visit. Instead, they argue that Mr. Kong did not need to park because the Car Wash is a full service car wash. Plaintiff maintains that the parking lot serving the Car Wash was in fact available to customers. There were no signs in the parking lot indicating that the parking spaces were reserved or not available. In fact, one of the photos produced by the defense shows a sign that says "SELF-SERVE." Additionally, the photos by plaintiff's investigator clearly show several cars parked in the spaces, with

no indication that they were being worked on or attended to by employees, as Defendants allege. (DKT No. 28-9, Photos by Louis).

More importantly, however, what the defense takes for granted—and frankly, what many able-bodied persons take for granted—is the fact that Mr. Kong cannot just simply get out of his car and hand over his keys to an attendant as the defense suggests. As specifically outlined in Plaintiff's statement of facts, which the defense ignores but does not dispute, Mr. Kong drives a specially equipped van with a ramp that deploys from the passenger side which allows him to exit his vehicle in his wheelchair. (Plaintiff's SUF #2). For this reason, Mr. Kong needs a van accessible parking space to ensure that he can properly and safely exit his vehicle. Otherwise, he runs the risk of getting hit by other cars who may not notice that the ramp is deployed.

And neither can Defendant force Mr. Kong to take that risk. Mr. Kong is entitled to this van accessible parking space under the law. The ADA Standards are clear: any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. See 1991 Standards § 4.1.2(5); 2010 Standards § 208.1. Alternatively, if the parking is not used for customer parking, then Defendant was required to provide a compliant passenger loading zone adjacent to a vehicle pull-up space. 1991 Standards § 4.66; 2010 Standards §§ 209.1, 503. In any event, the Defendant failed to comply with the access standards at its Car Wash.

**IV. DEFENDANT IS REQUIRED TO PROVIDE AN ACCESSIBLE TRANSACTION COUNTER**

Next, the defense argues that they are not required to provide an accessible transaction counter because "the counter ends and has a 35 inch opening for all disabled transactions." (See DKT No. 30, Defense Brief, p.

12:21-23). This is insufficient under the ADA. A business must remove barriers to the extent that it is readily achievable. A business only gets to avoid providing full and equal (i.e. code complaint) access if it is not "readily achievable" to do so. *See* 28 C.F.R. § 36.304(d)(2)("**If** . . . the measures required to remove a barrier would not be readily achievable, a public accommodation may take other readily achievable measures…that do not fully comply with the specified requirements.")(emphasis added). The language is clear that alternatives are only a satisfactory solution "where a public accommodation can demonstrate that barrier removal is not readily achievable . . ." *Id*. *See also Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043, 1050 (9th Cir. 2008) (where the Ninth Circuit rejected the defendant's argument that it did not need to remove barriers inside the winery because all services were offered at an outside gazebo and held, "a facility may only substitute alternatives to barrier removal where . . . measures required to remove a barrier would not be readily achievable.")

      Again, the standards are clear. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1); 2010 Standards § 904.4 & 904.4.1. Defendants do not get to unilaterally decide that they are going to ignore these standards and provide something else instead. Here, the defense does not dispute that the Car Wash does not have an accessible transaction counter, nor do they argue that providing a transaction counter that complies with ADA Standards is not readily achievable. The alternate accommodation that the defense points to is therefore insufficient under the law. Thus, Defendants violated the ADA by failing to provide an accessible transaction counter that complies with the applicable standards.

## V. DEFENDANTS ARE REQUIRED TO PROVIDE A COMPLIANT MIRROR IN THE RESTROOM

As with the parking and the transaction counter, the standards are also clear with respect to restrooms and features of the restrooms, including the mirrors. Where toilet rooms are provided, each toilet room shall comply with 603. See 2010 Standards § 213.1. Where mirrors are provided, at least one shall comply with 603.3. See 2010 Standards § 213.3.5. This means that *each* restroom must comply with the applicable design standards, which require that mirrors be mounted so that the bottom edge of the reflecting surface is no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

The only potentially applicable exception to this requirement is where restrooms are "clustered in a single location." See 2010 Standards § 213.2(3). "A 'cluster' is a group of toilet rooms proximate to one another. Generally, toilet rooms in a cluster are within sight of, or adjacent to, one another." See 2010 Standards, Advisory 213.2. In such circumstances, the accessible restroom must be identified with signage displaying the International Symbol of Accessibility. See 2010 Standards § 213.2(3). Here, the defense does not specify where the allegedly compliant restroom is located and fail to demonstrate that the restroom had the required ISA signage.

Thus, Defendants violated the ADA by failing to provide an accessible restroom that complies with the applicable standards.

//

## VI. SUBSEQUENT ALTERATIONS ARE RELEVANT TO PROVE THAT PROVIDING ACCESS IS READILY ACHIEVABLE

Finally, the defense claims that "subsequent remedial measures" are inadmissible. However, these subsequent alterations are relevant in proving that removing the barriers are readily achievable. See *Wilson v. Pier 1 Imports (US), Inc.*, 439 F.Supp.2d 1054, 1069 (E.D. Cal. 2006) Here, Defendants striped and installed a designated accessible parking space after this lawsuit was filed. Although the space is still not compliant for several reasons, as outlined in Plaintiff's moving papers, they have demonstrated that doing so is feasible, i.e. readily achievable.

## VII. CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that the Court grant his motion.

Dated: April 29, 2019                                    Center for Disability Access

                                                                                    By:*/s/ Isabel Rose Masanque*
                                                                                       Isabel Rose Masanque
                                                                                       Attorneys for Plaintiff